**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG**

**JEFF CORR,**

       **Plaintiff,**

**v.**                                                     **Case No. 6:11-cv-00865**

**BUREAU OF THE PUBLIC DEBT,**
**United States Department**
**of the Treasury,**

       **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

### Introduction and Procedural History

On November 8, 2011, the plaintiff, one of the defendant's employees, filed a Complaint, pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a(g)(1), in which he seeks "the full contents" of a case file created as a result of allegations made by the plaintiff, and not just documents prepared by himself.  (ECF No. 1, at 1.)  The plaintiff is proceeding *pro se*; accordingly, under the Standing Order relating to magistrate judges, the case was referred to the undersigned for submission of proposed findings and recommendation for disposition to the presiding District Judge, the Hon. Thomas E. Johnston.

The undersigned conducted a status conference on January 4, 2012, at which the plaintiff appeared in person and the defendant appeared by Assistant United States Attorney J. Christopher Krivonyak (ECF No. 7).  The plaintiff is college educated and

well-equipped to represent himself; the parties agreed that discovery was not needed and the case could be resolved on summary judgment.

On January 26, 2012, the plaintiff filed his motion for summary judgment (ECF No. 12) and memorandum in support (ECF No. 13).  The defendant filed a response (ECF No. 18), and the plaintiff filed a reply (ECF No. 19).  On January 31, 2012, the defendant filed a motion to dismiss and/or for summary judgment with exhibits (ECF No. 14) and a memorandum in support (ECF No. 15).  The plaintiff filed a response (ECF No. 17).  The defendant did not file a reply.

## Standard of Review

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2011).  Material facts are those necessary to establish the elements of a party's cause of action.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  *Id.*  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  *Overstreet v. Kentucky Cent. Life Ins. Co.,* 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact.  Fed. R. Civ. P. 56(c)(1)(B).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The undersigned notes that the defendant's motion is "to dismiss" and/or for summary judgment.  While the motion recites that it is based on lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(1) and (b)(6), Fed. R. Civ. P., the relief sought is for summary judgment, and the defendant submitted exhibits for consideration.  Accordingly, the "to dismiss" language will be treated as surplusage, and the court will determine only if entry of summary judgment is appropriate.

## Undisputed Facts

The parties have provided documents in support of their assertions.  Based on these documents, the undersigned proposes that the presiding District Judge **FIND** that the following facts are true and there is no genuine dispute as to them.

3

1.  On unknown dates in the late summer and fall of 2010, the plaintiff[1] reported to Kimberly McCoy, Assistant Commissioner of the Office of Information Technology, a series of incidents of alleged misconduct by the plaintiff's first-level supervisor (Anne Young) and second-level supervisor (Matt Miller) during the period August-October, 2010.   (ECF No. 12-8.)   The plaintiff characterized the incidents as illustrating "harassment and abuse" of himself by Young and Miller.   *Id.*   During the period in question, the plaintiff was manager of the Administrative Operations Branch of the Bureau of Public Debt; the incidents of which he complained concerned Branch projects and the plaintiff's management of Branch employees.  *Id.*

2.  One of the incidents resulted in a two-day suspension of the plaintiff.  *Id.* at 6. The plaintiff completed a performance appraisal of an employee of the Branch, giving the employee a "Meets" [Expectations] rating.   *Id.* at 2-3.   The employee filed a complaint concerning the appraisal.   *Id.*   Miller instructed the plaintiff to prepare an explanation as to why the employee's appraisal was "Meets," when the employee's performance was appraised as "Exceeds" during the prior appraisal period. *Id.* at 3.  On August 18, 2010, it was agreed by Miller that Kimberly McCoy would conduct an independent review of the employee's appraisal.   *Id.*   On September 3, 2010, Anne Young counseled the plaintiff concerning his performance on a variety of matters.  *Id.* at 5.  Young also instructed the plaintiff to prepare an explanation as to why the employee's appraisal was "Meets."   *Id.* at 6.   The plaintiff "provided input" and a "detailed explanation" of why he was unable to comply; he did not provide the explanation as to

---

[1] The plaintiff has been an employee of the defendant since April, 2002.

why the employee should be appraised as "Meets."  *Id.*  The two-day suspension was proposed on September 9, 2010, and served on October 21-22, 2010.  (ECF No. 18, at 1 n.1.)

3.  The plaintiff's complaints to Ms. McCoy triggered an investigation of Young and Miller by Tracy Walters, manager of the Policy and Analysis Branch, Human Resources Division.   (ECF No. 15, at 2.)   The investigation was termed an "Administrative Inquiry."  (ECF No. 14-2, at 2.)   On November 2, 2010, the plaintiff met with representatives of the Human Resources Division and was interviewed.[2]  (ECF No. 13, at 4.)  Ten days later, on November 12, 2011, the plaintiff submitted to Ms. McCoy his "Declaration" and request for "Remedies" (ECF Nos. 12-8 and 12-9).  The plaintiff asserts that the "Declaration" and "Remedies" constituted a "grievance."  (ECF No. 13, at 4.)  Ms. Walters advised the plaintiff that the Administrative Inquiry resulted in a Report of Investigation issued to Kimberly McCoy in January, 2011.  (ECF No. 12-7, at 3.)  Ms. Walters informed the plaintiff that, pursuant to the Privacy Act, he could not receive a copy of the Report of Investigation because he was not one of the parties investigated.  *Id.* at 2-3.

4.  In May, 2011, the plaintiff made requests, via e-mail, for the Report of Investigation.  *Id.* at 1-2.  He was informed that the Report would not be released to him because it was on "another person."  *Id.*  The requests were made to Tracy Walters, Angela Jones [Human Resources Division Director], and Fred Pyatt [Office of Management Services, Assistant Commissioner].  *Id.*

---

[2] The plaintiff indicates that he provided a "signed statement."  (ECF No. 13, at 4.)  The undersigned has not been provided with such a document dated November 2, 2010.

5.  On June 13, 2011, the plaintiff submitted a Privacy Act request to Angela Jones and Fred Pyatt "[i]n accordance with 5 USC 552a(d)(1) and as required per the description of the system of records for 'Treasury .002 Grievance Records – Treasury' as documented in the Federal Register," requesting "all copies of all documents that are or should be in the case file associated with my grievance reporting misconduct on the part of Matt Miller and Anne Young."  (ECF No. 14-2, at 2.)  He asked for a response by June 17, 2011.  *Id.*

6.  Denise K. Nelson, current Disclosure Officer[3], contacted Angela Jones and Tracy Walters "to determine if Corr ever filed a labor grievance which resulted in the creation of any records that were indexed by and retrieved by Corr's name."  (ECF No 14-1, ¶ 7, at 2.)

7.  Angela Jones and Tracy Walters informed Denise Nelson that "Corr never filed a grievance under a negotiated grievance procedure or BPD's administrative grievance procedure, as contemplated under the Treasury .002 System of Records – Grievance Records.  Therefore, no responsive records existed."  *Id.*, ¶ 8.

8.  A broader search revealed the Administrative Inquiry File of Young and Miller, prompted by the plaintiff's complaints.  *Id.* ¶ 10.

9.  On June 29, 2011, Denise Nelson wrote to the plaintiff and advised him that he had not "filed a grievance under part 771 of OPM regulations, nor a negotiated grievance

---

[3] Denise Nelson describes herself in her declaration as the defendant's Disclosure Officer.  (ECF No. 14-1, at 1.)  The plaintiff contends that Matt Miller is the defendant's Senior Privacy Officer with responsibility for "all privacy-related activities," and that Denise Nelson is responsible for handling requests under the Freedom of Information Act.  (ECF No. 17, at 4.)  This contested fact, which is not an element of the plaintiff's cause of action or the defendant's defense, is relevant but not material.

procedure." (ECF No. 14-2, at 5.)  With respect to the Administrative Inquiry File of Young and Miller, Denise Nelson informed the plaintiff as follows:

> The Administrative Inquiry was performed by the Human Resources Division.  The Report of Investigation clearly originated and was *created* by Human Resources.  The content of the report is *about* the allegation brought forward by you.  It is not *about* you.  Therefore, you are not entitled to the Report of Investigation under the Privacy Act.
>
> The case file was created by Human Resources as the result of the Administrative Inquiry.  Therefore, the contents of the case file are records *created*  by Human Resources and are *about* determining the validity of the allegations against Matt Miller and Anne Young.
>
> However, we are releasing 2 responsive records (totaling 6 pages) to you because they were *created* by you.  The Declaration you provided is being released and the page entitled "Remedies (1-9)" is being released.  These records are enclosed.  The remaining records in the case file are not releasable to you under the Privacy Act.

*Id.* at 5-6.  [Emphasis in the original.]

10.   According to Tracy Walters, the plaintiff has never been a bargaining unit employee during his employment at the Bureau of Public Debt; if he wished to file a grievance, he would have done so pursuant to the Agency Grievance Procedure, outlined in Personnel Directive PDS 771.  According to Tracy Walters, as of June 13, 2011, the plaintiff had never submitted a grievance.  (ECF No. 14-3, ¶¶ 9, 11, 12, at 2.)

11.   According to Tracy Walters, the Administrative Inquiry of Anne Young and Matt Miller was initiated by Kim McCoy, not as the result of a grievance filed by the plaintiff.  *Id.*, ¶ 15.

12.   According to Tracy Walters, the Administrative Inquiry was not a "grievance record" and it is not a record generated in conjunction with grievances filed under the Agency Grievance Procedure.  *Id.* ¶ 16.  The plaintiff was simply a witness.  *Id.*

13.   On September 13, 2011, the plaintiff submitted another request to Angela Jones, seeking access to the documents associated with his "grievance reporting misconduct on the part of Matt Miller and Anne Young." (ECF No. 14-2, at 8.)  In the request, the plaintiff asserts that his "Declaration" and "Remedies" constituted a "grievance" because it met the definition of "grievance" in applicable regulations.  *Id.* He quoted the Treasury Grievance System as defining "grievance" as "a request by an employee . . . for personal relief in a matter of concern or dissatisfaction relating to the employment of the employee . . ., including any matter in which an employee alleges . . . retaliation has been practiced against him." *Id.*

14.   On October 3, 2011, Denise Nelson responded to the September 13 request, noted that the request "is a duplicate of your June 13, 2011 request for the same records," and denied the request.  *Id.*, at 12.  The letter concluded with information as to the availability of judicial review, pursuant to 5 U.S.C. § 552a(g)(1)(B).  *Id.*

15.   The plaintiff filed this action on November 8, 2011.  (ECF No. 1.)

### Positions of the Parties – Plaintiff's Motion

The plaintiff asserts that his "Declaration" and "Remedies" constitute a grievance file as described in the Federal Register as "Treasury .002, Grievance Records – Treasure (the SORN [System of Records Notification])," and that he is entitled to all documents relating to the file.  (ECF No. 13, ¶¶ 1, 27, 30, at 1, 8.)  He claims that the investigation into his circumstances "became the basis for a decision by the plaintiff's management to suspend the plaintiff from work without pay." *Id.* ¶ 18, at 5.  If the court determines that his "Declaration" and "Remedies" are not a grievance file, the plaintiff

contends that the Report of Investigation is a record about himself to which he has a right of access.  *Id.*, ¶ 28.

The defendant responds that the plaintiff is attempting to gain access to personnel records of the plaintiff's supervisors.  (ECF No. 18, at 1.)  The defendant notes that the plaintiff's suspension (described as being imposed for "insubordination") was proposed on September 9, 2010, four months *before* the Report of Investigation was completed.  *Id.* n.1.

The plaintiff's reply denies that he is seeking access to certain personnel records of his supervisors; he contends that he is requesting access to his own grievance record, pursuant to the Privacy Act and SORN.  (ECF No. 19, at 2.)  With respect to the two-day suspension, the plaintiff disputes the use of the term, "insubordination," and asserts that he was suspended for "failing to complete a work assignment in August 2010 that the plaintiff considers (now and at the time) to be unethical."  *Id.*  He notes that the suspension notice gave two reasons: "failure to follow supervisory instructions" and "failure to respect administrative authority."  *Id.*  He denies that he has ever suggested that the Report of Investigation was the basis for his suspension; he contends that "a properly conducted investigation would have resulted in a reversal of the financial and administrative effects of the suspension."  *Id.* at 3.

## Positions of the Parties – Defendant's Motion

The defendant filed an alternative motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted and motion for summary judgment.  (ECF No. 14.)  The alternative motion contends that the plaintiff did not file a grievance, and that the defendant properly denied his request

because the records about his supervisors are not "about" the plaintiff.  *Id.* at 1-2; ECF No. 15, at 9-12.  The defendant asserts that guidance as to whether a record is "about" a person is found in *Sussman v. United States Marshal's Service*, 494 F.3d 1106, 1120-21 (D.C. Cir. 2007).  *Id.* at 13-14.  Finally, the defendant argues that the supervisors' right to privacy further supports nondisclosure of the documents, noting the potential for abuse.  *Id.* at 14-17.

The plaintiff's response reiterates that his "Declaration" and "Remedies" were a grievance by definition of SORN, which grievance related to himself, and that he is entitled to a copy of the entire record.  (ECF No. 17, at 3.)  He contends that the Administrative Inquiry was "*entirely*" about the plaintiff, and the actions of the plaintiff's supervisors which "adversely affect the terms and conditions of the plaintiff's employment."  *Id.* at 7.

## Issues Presented

A.  Did the plaintiff file a grievance?  If so, what documents is the plaintiff entitled to receive?

B.  If the plaintiff did not file a grievance, is the plaintiff entitled to receive all the documents relating to his submission?

## A.  Did the plaintiff file a grievance?

The documents which the plaintiff prepared, titled "Declaration" (ECF No. 12-8) and "Remedies" (ECF 12-9), and which he contends constitute a grievance, were submitted to Kimberly McCoy on November 12, 2010.  The opening paragraphs read as follows:

> I, Jeff Corr, hereby declare that the following is true and correct to the best of my belief.  I understand that 31 CFR Part 0, Subpart B 0.207 requires

10

that employees cooperate with official inquiries and respond to questions truthfully.

When I took my current position as manager of the Administrative Operations Branch in July 2009, I inherited an employee, [L.H.], with a wide reputation for frequent inappropriate workplace conduct.  Although management acknowledged awareness of [L]'s conduct issues, [L] had received excellent appraisal ratings through the years, and no action had been taken to address the inappropriate conduct.

Within a few months, I had the need to counsel [L] on several occasions, and eventually issued her a formal written reprimand for an inappropriate exchange that [L] initiated with her Lead in the open work area.  [L] responded to the reprimand in writing acknowledging the inappropriate behavior.  [L] filed a baseless EEO complaint immediately after receiving the reprimand.

Through the issuance of the formal reprimand, my management supported and encouraged my efforts to address [L]'s conduct.  They were not at all supportive once the EEO complaint was filed, reflecting a Bureau management culture that refuses to defend the integrity of the EEO complaint process.

Since the EEO complaint was filed in December 2009, Matt Miller and Anne Young have engaged in a pattern of harassment toward me through disrespectful and condescending remarks, and frivolous performance and conduct complaints, and by undermining my authority as branch manager, providing vague and indirect instruction, and subjecting my work to unusual scrutiny and unsupportable revisions.  This behavior intensified significantly after [L] filed a second EEO complaint in July 2010 indicating dissatisfaction with her appraisal rating.  In addition, Anne Young proposed and Matt Miller supported my suspension from work without pay because they felt that my performance of a single task was inadequate, despite an exemplary record over a 10 year military and civilian Federal career, and despite my significant efforts to escalate my concerns through my management chain regarding the appropriateness of the task and the challenges associated with performance of the task.

(ECF No. 12-8, at 1.)  Following the introductory paragraphs, the plaintiff listed specific incidents for two pages regarding Matt Miller and for more than three pages regarding Anne Young.  *Id.* at 1-6.  Sections IX and X regarding Matt Miller, and Sections VIII and IX regarding Anne Young, relate to [L.H.] and the two-day suspension; the other incidents concern other management issues which occurred prior to the events relating to the suspension.

The "Remedies" document requests the following relief:

1.  Destroy all official records related to the suspension.
2.  Destroy all electronic and paper records directly or indirectly related to the suspension in the personal files of Anne Young, Matt Miller, and Kim McCoy.
3.  Payment for all regular work hours lost due to the suspension.
4.  Investigation of incidents alleged in this complaint against Matt Miller and Anne Young, with appropriate disciplinary action if the incidents individually or in the aggregate are inappropriate, disrespectful, or are in any way contrary to the values of BPD.
5.  Six weeks paid administrative leave for rest and recovery [footnote omitted].
6.  Compensation for expenses related to past and future health consequences: $500,000 [footnote omitted].
7.  Compensation for lost earning potential resulting from damaged reputation: $200,000 [footnote omitted].
8.  Compensation for pain and suffering: $200,000.
9.  Establishment of a position to support the efficient and effective mission of the EEO Commission by:
    - documenting BPD's position with respect to the administration of complaints, including the handling of false or frivolous complaints and the roles and responsibilities of all involved;
    - documenting the process from the perspective of an accused person in a format that will facilitate an understanding of the process when provided to an individual accused of an EEO violation;
    - advocate for reform to promote efficiency in the handling of EEO complaints and fair treatment for all individuals involved in the process, including individuals alleged to have violated EEO laws, through the Federal government.

(ECF No. 12-9.)

The defendant provided a copy of its Agency Grievance Procedure (ECF No. 14-4).  It defines a "Grievance" as "[a] request for personal relief in a matter of concern or dissatisfaction relating to one's employment."  *Id.* at 1.  A separate, indexed file which contained all documents (or copies) is supposed to be established for all grievances.  *Id.*  An employee may present a grievance concerning a continuing practice or condition at any time.  *Id.* at 8.  A grievance concerning a particular act or occurrence must be presented within 15 days of the act or occurrence.  *Id.*  The two-day suspension was

12

proposed on September 9, 2010, and served on October 21-22, 2010.  (ECF No. 18, at 1 n.1.)  The "Declaration" is dated November 12, 2010, which is more than 15 days past the date of the proposed suspension, and the dates of the service of the suspension.

The Procedure specifies that to begin the informal grievance process, "an employee must submit an Administrative Grievance Form (Attachment 1).  (ECF No. 14-4, at 9.)  The Form is set forth at ECF No. 14-4, at 16.  The plaintiff did not submit an Administrative Grievance Form.  The Procedure provides that the information on the Form "should be provided to the employee's immediate supervisor."  *Id.* at 9.  The plaintiff submitted his information to Kimberly McCoy, not Anne Young, who is his immediate supervisor.  The Form requires a description of the "personal relief desired (e.g. a specific remedy benefiting the grievant, not including a request for disciplinary or other action affecting another employee.)"  *Id.* at 16.  The "Remedies" listed by the plaintiff include requests for actions affecting other employees, specifically Anne Young and Matt Miller.

Based on the failure of the plaintiff's "Declaration" and "Remedies" to comply with the requirements of the defendant's Agency Grievance Procedure, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff did not file a grievance, the document he submitted was not timely, and the document was not submitted to his immediate supervisor.

## B. If the plaintiff did not file a grievance, is the plaintiff entitled to receive all the documents relating to his submission?

This issue presents the applicability of the Privacy Act ("the Act"), 5 U.S.C. § 552a, and the defendant's System of Records Notification ("SORN"), 31 C.F.R. § 1.20 *et*

*seq.*, as supplemented by the Privacy Act systems of records found at 75 FR 54423-01

(Sept. 7, 2010).   On March 28, 2012, the Supreme Court decided *Federal Aviation*

*Admin. v. Cooper*, No. 10-1024, 2012 WL 1019969 (Mar. 28, 2012), and described the

Act:

> The Privacy Act of 1974, codified in part at 5 U.S.C. § 552a, contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies.  If an agency fails to comply with those requirements "in such a way as to have an adverse effect on an individual," the Act authorizes the individual to bring a civil action against the agency.  § 552a(g)(1)(D).  For violations found to be "intentional or willful," the United States is liable for "actual damages."  § 552a(g)(4)(A).

2012 WL 1019969 *3.

> Section 552a(d)(1) provides as follows:
>
> (d) Access to records. – Each agency that maintains a system of records shall –
> (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him . . ..
>
> Section 552(g)(1) sets forth a civil remedy:
>
> (g)(1) Civil remedies. – Whenever any agency . . .
> (B) refuses to comply with an individual request under subsection (d)(1) of this section;
> * * * or
> (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,
> the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

Section 552a(g)(3)(A) authorizes a district court to enjoin the agency from withholding

the records, order the agency to produce the records improperly withheld, and may

examine the contents of the agency records *in camera*, using a *de novo* standard of review.  The burden is on the agency to sustain its action.

The regulations promulgated by the Department of the Treasury (SORN) establish procedures for notification and access and are found at 31 C.F.R. § 1.20 *et seq.*  "The regulations apply to all records which are contained in systems of records maintained by the Department of the Treasury and which are retrieved by an individual's name or personal identifier."  31 C.F.R. § 1.20.  The term "record" is defined as

> any item, collection, or grouping of information about an individual that is maintained by the Department of the Treasury or component of the Department.  This includes, but is not limited to, the individual's education, financial transactions, medical history, and criminal or employment history and that contains the name, or an identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

*Id.* at § 1.21(d).  The term "system of records" means

> a group of any records under the control of the Department of the Treasury or any component from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

*Id.* at § 1.21(e).

If an individual makes a request, the procedures allow for the individual to be notified "if any system of records named by the individual contains a record *pertaining to that individual.*"  *Id.* at § 1.26(a).  [Emphasis supplied.]  The procedures also specify the requirements for access to such records.  *Id.*  Exceptions apply to certain categories of exempt records, to information compiled in reasonable anticipation of a civil action or proceeding, and to "information pertaining to an individual which is contained in, and inseparable from, another individual's record."  *Id.* at § 1.26(c).

By Order entered March 28, 2012 (ECF No. 20), the undersigned directed the defendant to produce *in camera* the Report of Investigation.  On March 30, the defendant timely submitted the Report (ECF No. 21 [sealed]).  The Report is a three-page document with a summary of the investigation, conclusion and recommendation. *Id.* Attached to it are various supporting documents, such as declarations, hand-written notes, and copies of e-mails (hereinafter referred to collectively as "Exhibits").

The defendant contends that the Report and Exhibits were "created to document an investigation into the conduct of [Matt Miller] and [Anne Young], who were Plaintiff's supervisors at the time.   Plaintiff submitted information to the . . . investigators as a witness, but the subjects of the investigation were his supervisors, not Plaintiff."  (ECF No. 15, at 12.)  The Report and Exhibits are indexed under the names of Miller and Young, not Corr.   *Id.*  The defendant asserts that the applicable standard is set forth in *Sussman v. United States Marshal's Service*, 494 F.3d 1106, 1120-21 (D.C. Cir. 2007).

The plaintiff asserts that the Report and Exhibits are "*entirely*" about him, his reports to senior management, the lack of support he received from management, his suspension, reputation, future opportunities, and job satisfaction.  (ECF No. 17, at 7.) [Emphasis in the original.]

In *Williams v. Department of Veterans Affairs*, 104 F.3d 670 (4th Cir. 1997), the Fourth Circuit considered a Privacy Act request made by a veteran who complained about the conduct of his psychologist.  An investigation of the psychologist's treatment of the plaintiff/veteran was conducted.  When the plaintiff/veteran requested access to the document written by the investigator, he was refused because the document was not

16

retrievable by the plaintiff's/veteran's name or his identifier.  The decision quotes the Privacy Act's definitions of "record" and "system of records."  104 F.3d at 673.   In *Williams*, the Fourth Circuit concluded that "courts have been lenient in determining what information constitutes a 'record' within the meaning of the Act.  *Id.*  [Citations omitted.]  The legislative history of the Privacy Act makes it clear "that a 'record' was meant to 'include as little as one descriptive item about an individual."  *Id.* at 674.  The Fourth Circuit held that the documents sought by Williams were "'records' within the meaning of 5 U.S.C. § 552a(a)(4).

The appellate court than considered whether the documents were within the Department of Veterans Affairs "system of records," noting that courts have construed that term narrowly.  *Id.*  [Citations omitted.]  The Fourth Circuit wrote that "there is no legislative history on why Congress chose the phrase "is retrieved," but it provided this quote from the Senate Report on the Act:

> No exemption from or qualification of the right of data subjects to have full access to their records should be granted unless there is a clearly paramount and strongly justified societal interest in such exemption or qualification . . ..   The instances in which it can be convincingly demonstrated that there is a paramount society [sic] interest in depriving an individual of access to data about himself would seem to be rare.

S. Rep. No. 1183, 93rd Cong., 2d Sess. (1974), *reprinted in*  1974 U.S.C.C.A.N. 6916, 6935 (quoting and adopting the report of the HEW Secretary's Advisory Committee on Automated Personal Data Systems);  *id.* at 675.  Remand was necessary to address whether the documents were within the "system of records," that is, the storage and

retrievability characteristics in the Department of Veterans Affairs' system of records. *Id.* at 677.[4]

The undersigned gives greater weight to rulings from the Fourth Circuit, of course. The defendant, as noted above, relies on *Sussman*, a decision from the D.C. Circuit. In that case, a former federal criminal defendant sought records from the United States Marshals Service. The D.C. Circuit wrote:

> [W]e interpret 5 U.S.C. § 552a(d)(1) to give parties access only to their own records, not to all information pertaining to them that happens to be contained in a system of records. For an assemblage of data to qualify as one of Sussman's records, it must not only contain his name or other identifying particulars but also be "about" him. *Tobey v. NLRB*, 40 F.3d 469, 472 (D.C. Cir. 1994). That is, it must actually describe him in some way. *Id.* Hence, only those records that are "about" Sussman are subject to disclosure based on his § 552a(d)(1) request. *Accord* OMB Circular A-130, § 8a(9)(d), 58 Fed. Reg. 36,068, 36,073 (1993) (instructing agen cies to "[p]rovide individuals, upon request, access to records *about them*" (emphasis added)).

494 F.3d at 1121.

The Report and Exhibits at issue here are unequivocally "about" the plaintiff and a series of incidents involving his supervisors. Applying the regulatory definitions to the facts, it is plain that the Report and Exhibits are a "record" because they are a "grouping of information about an individual that is maintained by the Department of the Treasury or component of the Department." The Report and Exhibits are actually about several individuals, including the plaintiff, whose names appear throughout the documents. Moreover, the Report and Exhibits are contained within the Bureau of Public Debt's "system of records" because the Report and Exhibits are a group of records from which

---

[4] The plaintiff/veteran had received copies of the documents during discovery. Subsequent litigation concerned attorneys' fees. *Williams v. Department of Veterans Affairs*, No. 97-1896, 1998 WL 738589 (4th Cir. Oct. 22, 1998), *cert. denied*, 526 U.S. 1150 (1999).

information is retrieved by the names of individuals.  The Denise Nelson declaration is unclear as to whether the Report and Exhibits were retrieved using the plaintiff's name, or Matt Miller's name or Anne Young's name, or any combination.  (ECF No. 14-1, at 2.) Pursuant to Section 552a(g)(3)(A), the defendant has the burden of sustaining its action, and the Nelson declaration fails to prove that the Report and Exhibits are not contained in the defendant's "system of records."  It is sufficient that the Report and Exhibits were retrieved using names.  There is no statutory or regulatory provision which limits a search only to the title of a file.  In this era of "Googling," it is hard to imagine *not* using a typical Boolean word search to find a record, and the plaintiff's name appears throughout the Report and Exhibits.  Thus whether or not the plaintiff's name was used to retrieve the Report and Exhibits, they would have been retrieved if his name had been used to search the content of the Report and Exhibits.  The undersigned proposes that the presiding District Judge **FIND** that the Report and Exhibits are a "record" "pertaining to" the plaintiff and others, within a "system of records" maintained by the Bureau of Public Debt.

The next issue is whether an exception applies to stymie the plaintiff's access to the Report and Exhibits.  Section 1.26(c)(3) of the regulations provides that access shall not be given to "information pertaining to an individual which is contained in, and inseparable from, another individual's record."  The Report and Exhibits are as much "records" "pertaining to" Anne Young and to Matt Miller (and possibly others) as to the plaintiff; however, they are separable.  It is not disputed that neither Anne Young nor Matt Miller has given written consent to the plaintiff that he have access to records pertaining to Young or Miller.  The undersigned proposes that the presiding District

19

Judge **FIND** that the following segments of the Report and Exhibits are separable and are accessible to the plaintiff:

1.    Report of Investigation: Background, Summary of Investigation (first four paragraphs only), Conclusion (first paragraph only) (ECF No. 21-1, at 2-4);

2.   Declaration of Jeff Corr [previously disclosed] (*id.* at 12-17);

3.   Notes of interview of Jeff Corr (*id.* at 26-35);

4.   Emails to or from Jeff Corr (*id.* at 44-57);

5.   Remedies [previously disclosed] and emails (*id.* at 61, 63).

In summary, the undersigned proposes that the presiding District Judge **FIND** as follows:

(a) There is no genuine issue as to any material fact;

(b) The Report and Exhibits constitute "records" within the meaning of the Privacy Act;

(c) The defendant has failed to sustain its burden of proving that the Report and Exhibits are not within the defendant's "system of records;"

(d) The Report and Exhibits are records pertaining to the plaintiff and others; and

(e) The Report and Exhibits are capable of being separated among the plaintiff, Anne Young and Matt Miller.

It is respectfully **RECOMMENDED** that the presiding District Judge:

(1) Grant the plaintiff's motion for summary judgment (ECF No. 12) in part and deny it in part, directing the defendant to produce to the plaintiff only the portions of the Report and Exhibits listed above, and deny the plaintiff's request for "legal costs," because he has represented himself; and

20

(2)  Deny the defendant's motion to dismiss and/or for summary judgment (ECF No. 14).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit it to the plaintiff and to counsel of record.

April 4 , 2012

Mary E. Stanley
United States Magistrate Judge