**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

JEFF CORR,

                            Plaintiff,

v.                                     CIVIL ACTION NO.  6:11-cv-00865

BUREAU OF THE PUBLIC DEBT,

                            Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff Jeff Corr's motion for summary judgment [Docket 12] and Defendant Bureau of the Public Debt, United States Department of the Treasury's cross motion to dismiss and/or for summary judgment [Docket 14].

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this civil action arises under the provisions of the Privacy Act, 5 U.S.C. § 522a *et seq.*  Because Plaintiff proceeds *pro se*, this case was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and recommendation ("PF&R").  Magistrate Judge Stanley filed her PF&R [Docket 22] on April 4, 2012, recommending that this Court grant Plaintiff's motion for summary judgment in part and deny it in part, and deny Defendant's motion to dismiss and/or for summary judgment.  In response to Magistrate Judge Stanley's PF&R, Plaintiff and Defendant both filed timely objections which are ripe for the Court's consideration.

The Court finds that there are no disputed issues of material fact and that Defendant is entitled to judgment as a matter of law. For the reasons that follow, the Court **DENIES**

Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion to dismiss and/or for summary judgment.

## I.       BACKGROUND

The dispute in this case arises from Plaintiff Jeff Corr's claim of access to a case file in the possession of Defendant Bureau of the Public Debt ("BPD").   The pertinent facts are undisputed, and are presented here only in truncated version.

Plaintiff is an employee of BPD. (Docket 13 at 1.)  Over the course of several months in the fall of 2010, Plaintiff reported a series of incidents of alleged misconduct by his first and second-level supervisors, Anne Young and Matt Miller. (*Id.* at 3.)  One of these allegations of misconduct involved a two-day suspension that Plaintiff received and served on October 20 and 21, 2010.  (Docket 12-8 at 6.)  Defendant BPD initiated an investigation of these allegations in November 2010, and in doing so began to create the "Administrative Inquiry File" which is the subject of this litigation.   (Docket 15 at 4.)

On November 12, 2010, and as part of the investigation, Plaintiff submitted to Jessica Stout of BPD's Human Resources Division a seven-page self-created document detailing these allegations of harassment and misconduct. (Docket 12-8.)  The portion of the document entitled "Declaration" contained detailed allegations of alleged harassment on the part of both supervisors. (*Id.* at 1-6.)   Under the section entitled "Remedies", Plaintiff requested a reversal of his suspension, money damages, including damages for pain and suffering, and alteration of administrative records to eliminate any reference to his suspension.  (*Id.* at 7.)  Defendant added these documents to the case file that had been developed to document its investigation.   It concluded its investigation of Anne Young and Matt Miller in January, 2010.  (Docket 15 at 3.)

In April and May, 2011, Plaintiff requested and was denied documentation relating to the investigation of his supervisors. (Docket 14-2 at 2.) On June 13, 2011, Plaintiff submitted another records request to BPD's Human Resources Division, citing 5 U.S.C. § 522a(d)(1) and "Treasury .002 Grievance Records—Treasury."[1] (Docket 14-2 at 2; Aff. of Denise K. Nelson, Docket 14-1 at ¶ 6.) Plaintiff requested "all copies of all documents that are or should be in the case file associated with my grievance reporting misconduct on the part of Matt Miller and Anne Young." (Docket 14-2 at 2.) After searching the records, BPD's Disclosure Officer Denise K. Nelson determined that Plaintiff had never filed a grievance. (Aff. of Denise K. Nelson, Docket 14-1 at ¶ 6.) In an effort to more fully respond to Plaintiff's request, Defendant performed a broader search of records specific to the targets of Plaintiff's misconduct allegations—his supervisors. (*Id.* at ¶ 9; Aff. of Tracy Walters, Docket 14-3 at ¶ 13.) That search recovered the Administrative Inquiry file. (Aff. of Denise K. Nelson, Docket 14-1 at ¶ 10; Aff. of Tracy Walters, Docket 14-3 at ¶ 14.)

After concluding that the Administrative Inquiry file was not a grievance record, Defendant informed Plaintiff that he had no Privacy Act right of access to the file because it documented an investigation of third parties and did not concern him. (Docket 14-2 at 5.) After a second request for the Administrative Inquiry File was denied, Defendant informed Plaintiff of his right to seek judicial review pursuant to 5 U.S.C. § 522a(g)(1)(B). (*Id.* at 12.) Plaintiff proceeded to bring a civil action in this Court, requesting access to the Administrative Inquiry file pursuant to the Privacy Act.

This action was referred to Magistrate Judge Stanley, who held a status conference on January 4, 2012. At that conference, the parties agreed that discovery was unnecessary and the

---

[1] The United States Department of the Treasury System of Records Notices can be found at 75 Fed. Reg. 54423 (Sept. 7, 2010).

case could be resolved on summary judgment. (Docket 22 at 2.)  The parties submitted cross motions for summary judgment[2], and Magistrate Judge Stanley thereafter submitted her PF&R. Magistrate Judge Stanley evaluated Plaintiff's Privacy Act request on two independent bases. First, she considered whether Plaintiff filed a grievance.  If so, she reasoned, Department of the Treasury regulations may entitle Plaintiff to the Administrative Inquiry file as a record of that grievance.  Second, if Plaintiff did not file a grievance, she discussed whether the Privacy Act otherwise provided Plaintiff a right of access to the file.

Magistrate Judge Stanley concluded that Plaintiff did not file a grievance in accordance with BPD's administrative grievance process.  Further, she reasoned that because the Administrative Inquiry file was a "record" about Plaintiff within a "system of records", Plaintiff was entitled to part of its contents.  (*Id.* at 19-20.)  Because significant portions of the file are records pertaining to Anne Young and Matt Miller—who have not consented to Plaintiff's access—Magistrate Judge Stanley proposed a finding that the Privacy Act permitted Plaintiff's access only to those portions of the Administrative Inquiry file that were separable from his supervisors' records.  (*Id.* at 20.)

## II.      OBJECTIONS TO THE PF&R

Plaintiff's principal objection to the PF&R is the magistrate judge's proposed finding that his "Declaration and Remedies" was not a grievance.  (Docket 23 at 1-5.)  He requests that this Court find that his submission was a grievance under Treasury Regulation .002—Grievance Records, thereby granting him access to the entire Administrative Inquiry file.  To the extent Plaintiff failed to comply with applicable administrative requirements in initiating his grievance,

[2] Because Defendant's Motion to Dismiss and/or Summary Judgment [Docket 14] contained a supporting affidavit, the Magistrate Judge correctly construed the motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

Plaintiff implores the Court to focus instead on the subject matter of his complaints in determining whether the Privacy Act requires BPD to relinquish the Administrative Inquiry file. Plaintiff contends that any procedural defects should not be held against him, because BPD had the responsibility to ensure that the procedural requirements were met. (Docket 23 at 3.)  Second, Plaintiff objects to the magistrate judge's recommendation that Plaintiff be permitted to access the Administrative Inquiry file only in redacted form. (*Id.* at 6.) Thirdly, Plaintiff objects to the magistrate judge's recommendation that this Court deny his request for legal costs.  (*Id.* at 6.) Though he proceeds without the assistance of legal counsel, Plaintiff submits that he is entitled to reimbursement of this Court's filing fee and other costs of litigation.

Defendant also filed objections to the PF&R.  Defendant objects primarily on the basis that the PF&R skirts the issue of retrieval—an issue it claims is central to the determination of whether a "record" is within a "system of records" under the Privacy Act. (Docket 24.)   To the extent the magistrate judge concluded that the Administrative Inquiry file is maintained within a system of records merely because Plaintiff's name would have been found using a Boolean word search, Defendant contends that the Privacy Act does not impose an obligation upon government agencies to convert paper records into a format that is searchable by computer. (*Id.* at 2.) Instead, Defendant asserts that the proper inquiry should focus on the agency's actual practice and procedure of retrieving the records in question.  (*Id.* at 3.)

In support of its objections to the PF&R, Defendant submitted the affidavit of Denise K. Nelson, Disclosure Officer at the Bureau of Public Debt in Parkersburg, West Virginia. Defendant submitted this affidavit to "more fully address the retrievability issue." (*Id.* at 7.)  Ms. Nelson is charged with administering BPD's statutory duties under the Privacy Act. (Aff. of Denise K. Nelson, Docket 24-1 ¶ 2.)  This affidavit describes BPD's method of storage and

retrieval of administrative inquiry files.  (*Id.* at ¶¶ 7-8.)  Administrative inquiry files are maintained in paper format and organized into separate file folders. (*Id.* at ¶ 7.) Each file folder is indexed by the name of the employee who is the subject of the inquiry. (*Id.*) In this case, the Administrative Inquiry file that Plaintiff seeks was indexed and retrieved by the names of Anne Young and Matt Miller.  (*Id.* at 9.)  It was not retrievable by Plaintiff's name or any other personal identifier.  (*Id.*)

Plaintiff filed a response to Defendant's objections to the PF&R. (Docket 25.)  Though Plaintiff does not object to the substantive content of Ms. Nelson's affidavit, he claims that she is not, in fact, responsible for handling Privacy Act requests within the Bureau of Public Debt.  (*Id.* at 2.)  He claims that Ms. Nelson has a lack of Privacy Act expertise.  (*Id.*)  Plaintiff also claims that since Ms. Nelson's affidavit acknowledges that the Administrative Inquiry file is a "record" covered by the BPD.001 System of Record Notice, (Aff. of Denise K. Nelson, Docket 24-1 at ¶ 6), Defendant's arguments to the contrary are moot.  (Docket 25 at 3.)

### III.     STANDARDS OF REVIEW

This Court is required to construe *pro se* pleadings liberally. Such pleadings are held to a less stringent standard than those drafted by attorneys.  *See Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.1978). This liberal construction of *pro se* pleadings allows for the development of potentially meritorious claims. *See Boag v. MacDougall,* 454 U.S. 364, 365 (1982).

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).  However, the Court is not required to review, *de novo* or by any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn,* 474 U.S. 140, 150

(1985).  Failure to file timely objections constitutes a waiver of *de novo* review and the party's right to appeal this Court's Order.  28 U.S.C. § 636(b)(1); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989).

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The substantive law determines which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [while] [f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.

The moving party bears the initial burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322-23.  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact."  *Temkin v. Frederick Cty. Comm'r*, 945 F.2d 716, 718-19 (4th Cir. 1991).  When determining whether there is an issue for trial, the trial court must view all evidence in the light most favorable to the nonmoving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 (4th Cir. 1990).  The non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

The parties must support their factual assertions by citing to particular materials in the record, including documents, affidavits, and declarations.  Fed. R. Civ. P. 56(c)(1)(A).  Where a party fails to either support an assertion of fact or address another party's assertion of fact, the trial court may, *inter alia*, consider any unsupported or unaddressed facts undisputed and grant

summary judgment if the motion, its supporting materials, and the undisputed facts show the movant is entitled to relief.  Fed. R. Civ. P. 56(e).

## IV.  DISCUSSION

Magistrate Judge Stanley construed Plaintiff's access argument as two separate inquiries. In continuing to do so, this Court first addresses whether the documents Plaintiff submitted are cognizable as a grievance under BPD's grievance procedure.  Second, and because the Court finds that Plaintiff did not submit a grievance under the grievance procedure, the Court considers whether the Privacy Act generally grants Plaintiff a right of access to the file.

### a.  Plaintiff's right of access pursuant to Treasury .002—Grievance Files

Plaintiff claims that the documents he submitted in support of his complaints were a grievance as defined by Treasury Department regulations.[3]  He claims that these regulations entitle him to the entire case file developed in response to his "grievance."  (Docket 13 at 1.)

The Federal Register sets forth a system of records notification ("SORN") for grievance records kept within the United States Department of the Treasury. 75 Fed. Reg. 54423 (Sept. 7, 2010). This system of records within the Treasury Department "contains records relating to grievances filed by Treasury employees" and its purpose is "to adjudicate employee administrative grievances filed under the authority of 5 C.F.R. part 771 and the Department's Administrative Grievance Procedure."  *Id.*  When an administrative employee files a grievance within this system, the SORN requires that the grievant "be provided a copy of the record under the grievance process." *Id.*

---

[3] Apart from the "Declaration" and "Remedies", Plaintiff alleges that he also provided detailed documentation of his complaints to Ms. McCoy "at some point" between August and October, 2010. (Docket 13 at 3.)  Whether Plaintiff first put his complaints in writing in August or November is of no moment because, as discussed herein, Plaintiff never filed a cognizable grievance under the Administrative Grievance Procedure.

In accordance with these regulations, BPD has established an Agency Grievance Procedure "[t]o provide employees an objective and systematic method to have their grievances and concerns addressed in an expeditious manner." (Docket 14-4 at 1.)  The Agency Grievance Procedure applies to all BPD employees, with the exception of bargaining unit employees whose grievances are covered by a negotiated grievance procedure. (*Id.*)

The Agency Grievance Procedure defines a grievance as "[a] request for personal relief in a matter of concern or dissatisfaction relating to one's employment[,] [so long as] [t]he matter [is] subject to the control of Public Debt." (*Id.*)   The Agency Grievance Procedure sets forth time limits and a procedure by which an employee must bring a grievance to the attention of BPD.  When a grievance concerns a continuing practice or condition, the employee may present the grievance at any time; when a grievance concerns a particular act, the employee must present the grievance within 15 days from the date of the act or from the date he became aware of the act. (*Id.* at 7.)

To initiate the grievance, an employee must submit an "Administrative Grievance Form" to the employee's immediate supervisor. (*Id.* at 8.) This form includes the issues involved in the grievance, the facts giving rise to the grievance, and the employee's requested relief.  The requested relief must directly benefit the grievant—the grievant may not include a request for disciplinary action affecting another employee. (*Id.* at 2.)   The Agency Grievance Procedure then provides that within ten days of the filing of the grievance, a management official will hold a meeting to evaluate the grievance, conduct any necessary investigation, and issue a decision as to the relief requested by the employee.  (*Id.* at 9.)

Plaintiff asserts that he submitted a grievance because his documents evidenced a "request for personal relief in a matter of concern relating to [his] employment[.]" (Docket 13 at

4.)  He reasons that he is therefore entitled to the Administrative Inquiry file that was developed in response to his complaints.  The Court agrees with the Plaintiff that the subject matter of his complaints would have been properly raised in a grievance—in relaying a pattern of alleged harassment by his supervisors, the complaints documented a matter of dissatisfaction relating to Plaintiff's employment.  It is quite another matter to assert that Plaintiff is entitled to the case file simply because the subject matter of his complaints could have been brought within the Agency Grievance Procedure.

By its terms, the SORN applies only to employee grievances filed under the Administrative Grievance Procedure.  Plaintiff did not properly file his complaints under this procedure, and this fact alone forecloses his argument that he has a right of access to the Administrative Inquiry file.   It is undisputed that Plaintiff did not file an Administrative Grievance Form.  It is further undisputed that he did not bring his complaints to the attention of his immediate supervisor, Anne Young.  As part of his requested remedies, Plaintiff demanded the destruction of all records relating to his suspension that were contained in the personal files of Anne Young, Matt Miller, and Kim McCoy.  He also requested that Anne Young and Matt Miller receive appropriate disciplinary action. These requests for relief are not cognizable under the grievance procedure, as they request disciplinary action affecting another employee.  Finally, to the extent the complaints raised in the "Declaration" and "Remedies" stemmed from his October, 2010 suspension, Plaintiff's complaints were untimely under the grievance procedure.

The SORN only provides a right of access to a grievance file when an aggrieved employee first properly complies with the procedural requirements of the Administrative Grievance Procedure.  Plaintiff cannot claim the benefit of this system after failing to comply with the requirements that would have brought his complaints within the scope of the SORN in

the first place.  Plaintiff's ignorance of the grievance system is no excuse. During the period in question, Plaintiff was manager of the Administrative Operations Branch of BPD and can reasonably be expected to have been at least tangentially aware of the existence of a grievance procedure.  Plaintiff failed to comply with the procedural steps that would have alerted BPD that he intended to file a grievance, and the Court will not impose upon BPD a duty to inform Plaintiff of his procedural missteps.  For these reasons, the Court overrules Plaintiff's objection to the PF&R and agrees with Magistrate Judge Stanley that Plaintiff did not file a grievance.

### b.  Plaintiff's right of access under the Privacy Act generally

Regardless of whether he filed a grievance, Plaintiff asserts that the Privacy Act gives him a right of access to the case file because it is directly about him. (Docket 13 at 8, *citing* 5 U.S.C. § 522(a).)  Defendant rejects Plaintiff's right of access claim.  It avers that the Privacy Act is inapplicable because the Administrative Inquiry file was not contained within a "system of records" retrievable by the Plaintiff's name or personal identifier.

The Privacy Act governs the disclosure of and access to administrative records concerning individuals.  5 U.S.C. § 522a.  The Privacy Act states that

> Each agency that maintains a system of records shall . . . upon request by an individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him[.]

5 U.S.C. § 522a(d)(1).  Within the Department of the Treasury, the Privacy Act applies "to all records which are contained in systems of records maintained by the Department of the Treasury and which are retrieved by an individual's name or personal identifier."  31 C.F.R. § 1.20.

The Privacy Act only mandates disclosure of information about an individual when the information is contained within a "system of records".  5 U.S.C. § 522a(d)(1); *see Boyd v. Secretary of the Navy*, 709 F.2d 684, 686 (11th Cir. 1983) (reasoning that the existence of a

"record" about an individual did not resolve the question of whether the individual had a right of access to the record—instead, the record must also be maintained in a "system of records").  A system of records is defined as "a group of any records under the control of the Department of the Treasury or any component from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  31 C.F.R. § 1.21(e); *see* 5 U.S.C. § 522a(a)(5).

The phrase "is retrieved" in the above definition has caused many courts to construe Section 522a(a)(5) narrowly, making the Privacy Act's coverage dependent on the method of retrieval of a record rather than the record's substantive content. *Williams*, 104 F.3d at 674 (citing cases); *see Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1123 (D.C. Cir. 2007) (finding that the Privacy Act requires disclosure of records only when the records are retrievable by the requestor's name as opposed to someone else's); *Cuccaro v. Sec'y of Labor*, 770 F.2d 355, 360 (3d Cir. 1985) ("[I]ndividuals have a right of access under the Privacy Act only to information in a record which is maintained in a system of records cued to the requestor's own name or identifier."); *Smiertka v. United States Dep't of Treasury et al.*, 447 F. Supp. 221, 228 (D.D.C. 1979) ("Only if information about individuals is maintained in groups of records keyed to the requestor are agencies required to afford access . . . [t]hat it can be easily retrieved in some other way by some other identifier is wholly beside the point.").  Where an individual is named in a record about someone else and the agency retrieves the record only by reference to the other person's name, the Privacy Act does not require the agency to grant the individual access to the record.  *See Sussman*, 494 F.3d at 1120 (citing Privacy Act Guidelines, 40 Fed. Reg. 28,949, 28,957 (1975)).

Defendant objects to Magistrate Judge Stanley's finding that the Administrative Inquiry file was a record within a "system of records" maintained by the Bureau of Public Debt.[4] (Docket 22 at 19.)  Magistrate Judge Stanley found that it was sufficient for the purposes of the Privacy Act that the Administrative Inquiry file was retrieved using names—even if those names were not the Plaintiff's.  This finding was premised on Magistrate Judge Stanley's reasoning that a typical Boolean word search of the file using Plaintiff's name would have retrieved the documents.  Defendant asserts that these conclusions are in error.  Instead, it argues, the Privacy Act's access provision applies only to records that are in practice and procedure retrieved by use of an individual's name or personal identifier.  Further, it contends that the Privacy Act does not impress a mandate upon government agencies to perform a Boolean word search of its documents or to even convert records into a format that is searchable by computer.  In its affidavit submitted in support of its objections, Defendant indicates that its administrative inquiry files are kept exclusively in paper format and indexed only by the name of the person under investigation.  (Aff. of Denise K. Nelson, Docket 24-1 ¶ 7.)

The Court agrees with Defendant.  The method of retrieval of a record, rather than its substantive content, implicates the coverage of the Privacy Act.  Plaintiff has a right of access to the Administrative Inquiry file only if that file "is retrieved" by Plaintiff's name or personal identifier. The Administrative Inquiry file is not contained in a system of records retrievable by Plaintiff's name. (*Id.* ¶ 9.)  Defendant located the requested file only after it broadened its search to look for records classified under the name of Plaintiff's supervisors. This paper file was

---

[4] Finding no objection to Magistrate Judge Stanley's proposed finding that the Administrative Inquiry file was a "record" about Plaintiff, the Court will not revisit that point.

indexed and retrievable only under the names of Anne Young and Matt Miller.  (*Id.*)  The issue is retrievability; there is no evidence that Defendant retrieved the file by use of Plaintiff's name.[5]

Though Plaintiff argues that Ms. Nelson, the officer who supplied the facts in the preceding paragraph, has a lack of Privacy Act expertise, he does not refute the facts that Defendant has presented relating to retrieval of the Administrative Inquiry file.  At the summary judgment stage, Plaintiff is obligated to demonstrate that a genuine issue of material fact remains with respect to his Privacy Act claim.  He has failed in that regard.  Defendant has presented uncontroverted evidence that the Administrative Inquiry file was retrievable only by the names of Plaintiff's supervisors. Having considered the entirety of the record in the light most favorable to Plaintiff, the Court concludes that no rational trier of fact could find in Plaintiff's favor respecting his right of access under the Privacy Act.  Defendant is entitled to judgment as a matter of law because the undisputed facts demonstrate that the Administrative Inquiry file was not maintained within a system of records retrievable by Plaintiff's name.  In the absence of a triable issue on Plaintiff's claims, the Court **GRANTS** the Defendant's motion for summary judgment.

## V.    CONCLUSION

For the foregoing reasons, the Privacy Act does not afford Plaintiff a right of access to the Administrative Inquiry file.  The Court therefore **OVERRULES** Plaintiff's objections to the PF&R [Docket 23] and **DENIES** Plaintiff's motion for summary judgment [Docket 12].  The

---

[5] Plaintiff contends that his right of access should not be contingent upon Defendant's choice to access the record using his supervisors' names. (Docket 25 at 1.) Plaintiff fails to demonstrate, however, that the Bureau of Public Debt's decision to classify its administrative inquiry files under the names of those being investigated is somehow inconsistent with the Privacy Act.  "Agency regulations promulgated pursuant to specific congressional authority are presumptively valid and are entitled to great deference." *King v. Califano*, 471 F. Supp. 180, 181 (D.D.C. 1979) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 433-34 (1971)).  The Court defers to the Bureau of Public Debt's decision in the absence of evidence indicating that this method is inconsistent with the Privacy Act's purposes.

Court **SUSTAINS** Defendant's objections to the PF&R [Docket 24] and **GRANTS** Defendant's motion to dismiss and/or for summary judgment [Docket 14].  The Court further **DISMISSES** this case from the Court's docket.  A separate Judgment Order will be filed this day implementing the Court's judgment.

        **IT IS SO ORDERED**.

        The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:       September 26, 2012

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE